DALY ET AL. *v.* SHOWERS ET AL.

[No. 15,330.  Filed May 4, 1937.  Rehearing denied October 14, 1937.  Transfer denied December 20, 1937.]

*Kane, Blain & Hollowell,* for appellants.

*Miller & Miller, Jess B. Fields* and *Edgar M. Blessing,* for appellees.

WOOD, C. J.—The appellants were preferred stockholders of the Weidley Motors Company, a corporation

organized and existing under the laws of Indiana. The appellees were directors of said corporation. Appellants brought suit against the appellees by an amended complaint in three paragraphs, to recover damages alleged to have been sustained by the appellants because of the maladministration of the affairs of said corporation by the appellees.

The issues were closed by an answer in general denial. On these issues the cause was tried by the court and a jury, resulting in a verdict and judgment in favor of appellees.

The first paragraph of complaint was dismissed during the trial. Within due time the appellants filed a motion for a new trial, which was overruled, and they appeal assigning this action of the trial court as the only error for reversal. The only causes for a new trial urged as basis for reversal are the giving of each of instructions Nos. 3, 4, 5, 6, 7, and 8 by the court on its own motion, and the refusal of the court to give instructions Nos. 2, 3, 7, and 8 tendered by appellants.

This appeal is taken under the proviso of Sec. 2-3223 Burns 1933, Sec. 497 Baldwin's Ind. St. 1934. The instructions given by the court on its own motion, those given at the request of the appellees, those given at the request of the appellants, and those which the court refused to give at the request of appellants, are incorporated in the record by a bill of exceptions, which recites that the same were applicable to the evidence in the cause. The evidence is not in the record.

The final result of this appeal is largely dependent upon the theory of appellants' amended second paragraph of complaint. Appellants contend that it is upon the theory of constructive fraud, while appellees contend that it is upon the theory of actual fraud and that was the theory adopted by and upon which the cause was tried in the lower court.

The allegations of the amended second paragraph of complaint briefly summarized are as follows: That the Weidley Motors Company was a corporation; that the appellants were owners of preferred stock in said corporation; that the appellees were directors of said corporation; that each of the shares of said preferred stock was of the par value of $100, payable on January 1, 1925; that prior to June 12, 1922, said corporation was the owner of assets of various kinds of the approximate value of $2,000,000 and sufficient to pay all outstanding indebtedness of said corporation and to redeem all of appellants' preferred stock at par in the event of liquidation of said corporation; that on or about the month of June, 1922, appellees proposed a plan of refinancing said corporation by issuing $700,000 worth of mortgage bonds, $350,000 to consist of class "A" bonds, the proceeds from which were to be used for the sole purpose of additional working capital for said corporation; $350,000 to consist of class "B" bonds, the proceeds derived therefrom to be used for the purpose of paying existing indebtedness of said corporation; that in June, 1922, appellees represented to appellants that if they would extend the date of maturity of their preferred stock for a period of five years and consent to the issuing of said $700,000 of mortgage bonds, to be a lien upon the assets of said corporation prior to the lien of appellants' preferred stock, that appellees would secure the cancellation of $150,000 of preferred stock and carry out the plan of refinancing said corporation; that appellees represented that if appellants would consent to the proposed plan and extend payment of their preferred stock and said plan was carried out said corporation would be placed on a sound financial basis and make appellants' preferred stock valuable; that the funds derived from class "B" bonds would be sufficient to pay all floating indebtedness of the corporation and

dividends on the preferred stock to July 1, 1922; that appellees represented that said corporation had secured or was about to secure a valuable contract from the Auburn Automobile Company for the manufacture of motors which would insure a profitable business to said corporation for a long period of years; that appellants believed and relied upon the representations of appellees, extended payment of the preferred stock and consented to said plan of refinancing said corporation; that thereafter, without notice to appellants and contrary to their representations, appellees cancelled or changed the contract with the Auburn Automobile Company, and made a new or modified contract with said company, and entered into a contract with the Stutz Motor Car Company; that said contracts were of no value and could not be performed at a profit to said Weidley Motors Company; that said contracts provided for the manufacture of motors at a loss; that although appellees represented that the Auburn Automobile Company would purchase the $350,000 of class "A" bonds, after appellants had consented to the issuing thereof, appellees refused to carry out said plan by which the Auburn Automobile Company was to purchase said class "A" bonds; that in lieu thereof appellees agreed and promised that they would purchase said class "A" bonds in such an amount as would be adequate to finance the new business of said company; that appellees did purchase $150,000 of class "A" bonds; that a large part of said sum was not used for working capital for said corporation, but was used to pay existing debts of said corporation on which appellees were personally liable and which operated to the direct and personal benefit of appellees, and which said debts it was represented by appellees would be paid from funds derived from the sale of class "B" bonds and accounts receivable of said corporation; that the appellees raised their salaries; that they re-

fused to purchase more class "A" bonds; that thereafter working capital in the sum of $200,000 was needed to continue the operation of said corporation and appellees refused to purchase any more of class "A" bonds as they had agreed to do and caused an action to be brought in the Marion Circuit Court for the appointment of a receiver for said corporation; that the appellee Fletcher, an officer and director of said corporation, was appointed as receiver; that upon his petition an order for the sale of the assets of said corporation was obtained; that thereafter the assets of said corporation were appraised at the sum of $378,124.17; that if appellees had carried out their promises and agreements the assets of said corporation would have had a value of $2,000,-000 as a going concern. "Plaintiffs further allege that the defendants knew that these plaintiffs did not have sufficient assets and would be financially unable to protect their interests in said corporation at any sale of the assets of said corporation had or made by said receiver and that said defendants, or some of them would be enabled to purchase said assets at an amount greatly below the real value thereof."

The amended third paragraph of complaint alleged substantially the same facts as the amended second paragraph, but alleged in addition thereto facts to the effect that the appellees entered into a conspiracy to defraud the appellants, the purpose of which conspiracy was consummated to appellants' damage. It is agreed that the amended third paragraph of complaint was upon the theory of conspiracy to defraud appellants.

"Fraud in its generic sense, especially as the word is used in courts of equity, comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another. Fraud has also been defined as any cunning or artifice used to cheat or deceive another. How-

ever, the wisdom of an exact legal definition of fraud has been questioned, and it has been stated that fraud is better left undefined, and some courts have said that the common law not only fails to define fraud but perhaps asserts as a principle that there shall be no definition. Further it is frequently stated that owing to the multiform character of fraud and the great variety of attendant circumstances no definition which is all inclusive can be framed, but each case must be determined on its particular facts." 26 C. J. sec. 1, p. 1059 and authorities there cited. Bigelow says, "Fraud consists in endeavor to alter rights, by deception touching motives, or by circumvention not touching motives." 1 Bigelow, on Fraud, p. 5. "Actual fraud is intentional fraud. It consists in deception, intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." 26 C. J. sec. 2, p. 1060, and authorities there cited; *Leader Pub. Co.* v. *Grant Trust Co.* (1914), 182 Ind. 651, 10 N. E. 1218. "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud. An intent to deceive is an essential element of actual fraud. The presence or absence of such an intent distinguishes actual fraud from constructive fraud." 26 C. J. sec. 3, p. 1061 and authorities there cited; *Leader Pub. Co.* v. *Grant Trust Co., supra.*

Directors of a corporation may in good faith become sureties on its notes or they may, in good faith, lend their credit to the corporation to enable it to carry on its legitimate business and take its bonds to secure themselves from personal loss,

and in so doing they acquire the same right as other mortgagees or creditors to protect themselves even to the extent of purchasing the property of the corporation at a foreclosure or receivership sale, which has become inevitable through no fault of themselves. 3 Fletcher, Cyc. Corp. sec. 876, p. 198, sec. 878, p. 204.

When the general scope and tenor of the allegations of the amended second paragraph of complaint are considered in their entirety as they must be to determine the theory of the pleading. See *Farwick* v. *Walker Hospital* (1936), 101 Ind. App. 489, 199 N. E. 883; *Indianapolis, etc., Co.* v. *Willson* (1933), 98 Ind. App. 72, 187 N. E. 400; *State ex rel. White* v. *Scott* (1908), 171 Ind. 349, 86 N. E. 409; *Muncie, etc., Co.* v. *Citizens, etc., Co.* (1912), 179 Ind. 322, 100 N. E. 65. It is very evident that if this paragraph of complaint stated a cause of action it was predicated upon the theory of actual fraud and that the conduct of the appellees as therein set out was prompted in bad faith.

In their brief appellants complain first of instruction No. 4 given by the court of its own motion. This instruction was in the following language: "Plaintiffs allege in the second paragraph of their complaint that the defendants, in this case, wrongfully take (took) advantage of their positions as directors and officers of the Weidley Motors Corporation, and by their wrongful conduct in making certain representations and in refusing to carry out the plan to provide working capital for said Weidley Motors Company, wrongfully acquired for their own personal benefit the assets of the said Weidley Motors Company.

"Such charges assume that the defendants acted in bad faith and that their ultimate purpose was to secure an unconscionable advantage of these plaintiffs. To permit a recovery under such circumstances, bad faith, or obtaining an unconscionable advantage are essential

elements which the plaintiffs must prove by a fair preponderance of the evidence.

"Neither poor business judgment nor negligent administration of the affairs of the Weidley Motors Company afford a basis for recovery by the plaintiffs on this paragraph of their complaint. There must be bad faith and a design to secure the property for the personal benefit of the defendants.

"If the defendants, at all times, acted in good faith and with the honest belief that their administration of the affairs of said Weidley Company was for the best interests of said company and with no intention of securing its assets for their personal benefit then the defendants, in this action, are not chargeable for the failure of this corporation and plaintiffs are not entitled to recover on the second paragraph of complaint."

Appellants base their criticism of this instruction upon the assumption that the amended second paragraph of complaint was founded upon the theory of constructive fraud, since the appellees sustained a fiduciary relation to appellants, and that therefore it was not necessary, in order to entitle the appellants to a recovery, that they prove that the acts of the appellees as alleged in said paragraph of complaint were motivated by bad faith. We have already reached the conclusion that the amended second paragraph of complaint was grounded upon the theory of actual fraud, it follows therefore that this instruction was applicable to the issues tendered by said paragraph of complaint, and that it is not subject to the infirmity of which appellants complain.

By instruction No. 3 given by the court of its own motion, the jury was informed of the responsibilities and duties which the law imposes upon directors of a corporation toward the corporation and its stockholders, the right of the stockholders to rely

upon the fidelity of the directors in protecting their interests and the directors' liability for unfaithfulness. Appellants' complaint of this instruction is that it is outside of the issues, that the complaint was not upon the theory of mismanagement and was not an action by the stockholders for the benefit of the corporation, against the directors for mismanagement. This criticism is without merit. This instruction was clearly within the issues presented by the amended third paragraph of complaint, which charged the existence of a conspiracy among the appellees to mismanage the corporation for their personal benefit.

By instruction No. 5 given by the court on its own motion the jury was informed that while it was essential that a director exercise good faith in the management of a corporation, it did not mean that he was a guarantor of the success of the corporation, that he was only required to exercise his best judgment in the management of the affairs of the corporation to the end that its business might be successfully operated, and that if the appellees did so conduct the affairs of the Weidley Motors Company, but that despite that fact its operation was unsuccessful, they would not be liable to appellants under either the amended second or third paragraph of complaint unless the jury found from the evidence that such failure was the result of bad faith upon the part of appellees. The appellees urge the same criticism against this instruction as that directed against instruction No. 3. This instruction was within the issues tendered by both paragraphs of the complaint.

While the evidence is not before us, in the bill of exceptions bringing the instructions into the record, the trial court certifies that the instructions certified as given and those certified as tendered and refused were applicable to the evidence. The appel-

lants complain of instructions Nos. 6, 7, and 8 given by the court on its own motion. We assume that these instructions were all applicable to the evidence before the jury. They informed the jury what the legal rights, duties and responsibilities of the appellees as directors of the corporation would be, if from the evidence it found certain facts to exist. Appellants say in support of their objections to these instructions that they are not applicable to the issues, and required the jury to find that the appellees acted in bad faith in order to warrant it in returning a verdict for appellants.

While instruction No. 6 was made to apply to both the second and third paragraphs of complaint it was applicable to the issues presented by both of said paragraphs, and it was not error to give it.

Neither instruction No. 7 nor 8 was applied specifically to either the second or third paragraph of complaint. They were clearly within the issues tendered by the third paragraph of complaint.

Appellants complain of the refusal of the court to give instruction No. 2 tendered by them. By this instruction the court was requested to inform the jury that appellants' amended second paragraph of complaint was upon the theory of constructive fraud, and then contained a resumé of the various elements, facts and circumstances which constitute constructive fraud. The refusal to give this instruction was not error. The amended second paragraph of complaint was not predicated upon the theory of constructive fraud, the balance of the instruction relating to constructive fraud, was fully and completely covered by appellants' requested instruction No. 1 which the court gave to the jury.

Appellants complain of the refusal of the court to give instruction No. 3 tendered by them. This instruc-

tion contained an abstract statement of law concerning the relation existing between directors and stockholders of a corporation. The subject-matter of this instruction was fully covered by instruction No. 3 given by the court of its own motion and appellants' instruction No. 12 given by the court at their request.

Appellants complain of the refusal of the court to give instruction No. 7 tendered by them. This instruction contained an abstract proposition of law, to the effect that if a person makes a positive statement of a fact, without knowledge that it is true, such person making the statement is liable for any damage suffered, if the statement is false and the party to whom it is made, without knowledge of its falsity, relies upon the truth of such statement to his damage. The refusal to give this instruction was not reversible error, the proposition which it announced was included in substance in other instructions given to the jury.

Finally the appellants complain of the refusal of the court to give instruction No. 8 requested by them. The action of the court was not error, the rule of law announced in this instruction was contained in instruction No. 14 given to the jury at the request of appellants.

Upon a careful examination of the record as it comes to us we find no reversible error.

Judgment affirmed.